Crew III, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner’s applications for accidental and performance of duty disability retirement benefits.
In May 1995, petitioner, previously employed as a police sergeant for the Town of Ramapo in Rockland County, applied for accidental and performance of duty disability retirement benefits based upon injuries to his lumbar and cervical spine allegedly sustained in November 1992. Such applications initially were denied based upon a finding that petitioner was not permanently incapacitated from the performance of his duties. Shortly thereafter, and based upon review of a subsequent MRI study, David Tucker, the orthopedic surgeon testifying on behalf of the Retirement System, concluded that petitioner indeed had *757 a herniated disk at the L5-S1 level and, therefore, was permanently incapacitated from the performance of his duties as a police sergeant. Tucker, however, was of the view that, inasmuch as this finding did not appear on the MRI studies taken shortly after petitioner sustained his injuries, the herniated disk observed could not be causally related to the 1992 accident. Petitioner’s applications again were denied, and petitioner sought review of respondent’s determination via this CPLR article 78 proceeding.
Upon review, this Court annulled respondent’s determination based upon a violation of State Administrative Procedure Act § 307 (2) and remitted the matter to respondent for a de novo determination based upon the existing record (262 AD2d 920 [1999]). Respondent thereafter denied petitioner’s applications but, upon subsequent review to this Court, we again annulled the underlying determination, finding that respondent had focused exclusively upon the causal relationship between the injury to petitioner’s lumbar spine and the November 1992 incident and neglected to consider the relationship, if any, between the injury to petitioner’s cervical spine and the November 1992 incident (287 AD2d 930 [2001]). Upon remittal, the Hearing Officer concluded that petitioner was not permanently incapacitated as a result of the injury to his cervical spine and that petitioner’s disabling lumbar injury was not causally related to the November 1992 incident. As a result, respondent denied petitioner’s applications yet again, triggering another round of review in this Court.
The crux of petitioner’s argument on review is that respondent erred in crediting Tucker’s testimony regarding the nature and extent of petitioner’s injuries. In this regard, Tucker opined that, based upon his review of petitioner’s 1992 MRI studies, petitioner had a narrowing of the disk space at the L4-5 level. Such finding, according to Tucker, did not correlate with the symptoms that petitioner experienced at the SI level, where Tucker observed no pathology on the MRI study. Although Tucker noted a herniated disk at the L5-S1 level on the 1996 MRI study and agreed that such finding would permanently incapacitate petitioner from the performance of his duties, he concluded that this disabling condition was not causally related to the November 1992 incident because there was no indication of any pathology at the L5-S1 level on the 1992 MRI studies.
In response, petitioner contends that there indeed was evidence of a bulging disk at the L5-S1 level on the 1992 MRI study and that Tucker failed to see it due to his lack of training in reading such films. We cannot agree. As a starting point, de *758 spite a lack of formal training in radiology, we cannot say, given Tucker’s occupation and experience, that he was unqualified to read petitioner’s MRI studies (see Price v New York City Hous. Auth., 92 NY2d 553, 559 [1998]; Matter of Lampidis v Mills, 305 AD2d 876, 878-879 [2003]). Moreover, even accepting petitioner’s claim that there was evidence of a bulging disk at the L5-S1 level on the 1992 MRI films, petitioner’s treating physician, Michael Resnick, conceded that he treated petitioner for a degenerative disk at the L5-S1 level in 1989, which could have resulted from “aging, wear and tear,” and that the herniated disk noted at that location on the 1996 MRI study could have been a continuation of that process. Thus, although Resnick insisted that the herniated disk at the L5-S1 level was the result of petitioner’s 1992 accident, he could not rule out the possibility that such finding was the product of a process that began years earlier. Under such circumstances, there is no basis for the wholesale rejection of Tucker’s testimony, and respondent was free to credit Tucker’s testimony over that offered by petitioner’s physician (see Matter of Proia v McCall, 306 AD2d 735 [2003]).
With regard to the injury to petitioner’s cervical spine, Tucker noted the presence of “a small herniated disk at the C5-6 level . . . slightly to the right of the midline with minimal compression on the spinal cord.” As petitioner’s complaints of tingling and numbness in the fingertips were primarily on the left side, Tucker opined that the positive finding on the MRI did not correlate with petitioner’s actual symptoms and, therefore, the injury to petitioner’s cervical spine did not permanently incapacitate him from the performance of his duties. Although petitioner’s physician offered a contrary opinion, that presented factual and credibility issues for respondent to resolve. Petitioner’s remaining contentions, including his claim that he was denied due process, have been examined and found to be lacking in merit.
Cardona, P.J., Mugglin, Rose and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.